# United States Court of Appeals for the Federal Circuit

2007-7278


ADELINA C. LAMOUR,

Claimant-Appellant,


v.


JAMES B. PEAKE, M.D., Secretary of Veterans Affairs,

Respondent-Appellee.


Adelina C. Lamour, of Olongapo City, Philippines, pro se.

David M. Hibey, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With him on the brief were Jeanne E. Davidson, Director and Donald E. Kinner, Assistant Director. Of counsel on the brief were David J. Barrans, Deputy Assistant General Counsel and Jane C. Kang, Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Ronald M. Holdaway

# United States Court of Appeals for the Federal Circuit

2007-7278


ADELINA C. LAMOUR,

Claimant-Appellant,

v.

JAMES B. PEAKE, M.D.,
Secretary of Veterans Affairs,

Respondent-Appellee.


Appeal from the United States Court of Appeals for Veterans Claims in Case No. 05-1108, Judge Ronald M. Holdaway.

_____

DECIDED: October 10, 2008

_____


Before NEWMAN, GAJARSA, and DYK, Circuit Judges.

NEWMAN, Circuit Judge.

Adelina C. Lamour, pro se, appeals the judgment of the Court of Appeals for Veterans Claims (the "Veterans Court") denying her request to reopen her claim for survivor benefits as the spouse of a veteran. Lamour v. Nicholson, No. 05-1108, 2007 WL 1586131 (Vet. App. May 23, 2007). The Veterans Court sustained the ruling of the Board of Veterans' Appeals, declining to reopen her claim on the ground that Mrs. Lamour had not established that she had been married to Mr. Lamour for at least one year. We conclude that the court erred in that it did not consider the VA's interpretation of the "deemed valid"

marriage statute and regulation as established in the VA general counsel's precedential opinion, as applied to Mrs. Lamour's situation.

## BACKGROUND

Frank L. Lamour Jr. served on active duty in the United States Army from August 1943 to January 1946. He lived in the Republic of the Philippines for some years—the record before us does not state his full history—and died in the Philippines on February 10, 1991. Nine days before he died, Mr. Lamour and the appellant were married by formal ceremony. Mrs. Lamour duly filed a claim for dependency and indemnity compensation as the surviving spouse. The VA regional office in Manila denied her claim because she and Mr. Lamour had not been married for at least one year, as is required by statute and regulation:

> 38 U.S.C. §1304. No dependency and indemnity compensation shall be paid to the surviving spouse of a veteran dying after December 31, 1956, unless such surviving spouse was married to such veteran--
>      (1) before the expiration of fifteen years after the termination of the period of service in which the injury or disease causing the death of the veteran was incurred or aggravated; or
>      (2) for one year or more; or
>      (3) for any period of time if a child was born of the marriage, or was born to them before the marriage.

See also 38 C.F.R. §3.54 (listing marriage requirements for all death benefits).[1] Relying solely on the "one year or more" provision, Mrs. Lamour appealed to the Board of Veterans Appeals, averring that she and Mr. Lamour had lived together as husband and wife for

---

[1] Several statutes and regulations relate to length-of-marriage requirements, aimed at different benefits. 38 U.S.C. §1304 deals with "dependency and indemnity compensation"; the Board cited §1102, the statute for "compensation" benefits; and the Veterans Court cited the "death pension" provision, §1541(f). The one-year requirement is the same in all.

many years before their formal marriage ceremony. The Board denied her claim in August 1991, stating that they had not been married for one year or more because "common law" marriage is not recognized in the Philippines. 38 U.S.C. §103(c) provides that validity of a marriage is determined according to the law of the place where the couple resided at the time of the marriage or when the right to the benefits accrued. See also 38 C.F.R. §3.1(j).

Mrs. Lamour requested that her claim be reopened. She submitted a statement that she had no knowledge of the law governing common law marriage in the Philippines, and filed an affidavit that she and Mr. Lamour had lived together as husband and wife for five years before their formal ceremony. The regional office ruled that this evidence could not establish a valid marriage. Mrs. Lamour then submitted additional evidence, including a copy of a bank check showing a joint account, a letter from a credit union, and an affidavit made by Mr. Lamour three years before he died stating that he was financially supporting the appellant. The regional office, affirmed by the Board, held that this evidence was not "material" under 38 U.S.C. §5108 because it "does not relate to an unestablished fact necessary to substantiate the claim," the necessary fact being a valid marriage under Philippine law.

The Veterans Court affirmed, stating that it was undisputed that Mr. and Mrs. Lamour were not married for one year or more prior to his death and that they had no child. The Veterans Court also referred to the statute, 38 U.S.C. §103(a), and regulation, 38 C.F.R. §3.52, concerning when a marriage would be "deemed valid" for benefit eligibility purposes despite a "legal impediment," and concluded that "none of the newly submitted evidence relates to whether the appellant's marriage could be deemed valid." Mrs. Lamour appeals to this court.

DISCUSSION

***Jurisdiction***

The Secretary argues that this appeal is not within our appellate jurisdiction, stating that this case is simply the application of established law to fact. Mrs. Lamour argues that this appeal involves the interpretation of statutory and regulatory provisions, particularly the "deemed valid" marriage provisions of 38 U.S.C §103(a) and 38 C.F.R. §3.52 and the evidentiary regulation 38 C.F.R. §3.205(c).

In accordance with 38 U.S.C. §7292(a), this court has jurisdiction to review a "decision [of the Veterans Court] with respect to the validity of *a decision of the Court on a rule of law or of* any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision." The italicized words were added to the statute by the Veterans Benefits Act of 2002, Pub. L. No. 107-330, §402(a), 116 Stat. 2820, 2832, in order to ameliorate previous appellate constraints as confirmed in Forshey v. Principi, 284 F.3d 1335, 1351 (Fed. Cir. 2002) (*en banc*). The 2002 statutory amendment enlarged this court's appellate authority, to include what we have described as a form of "case" jurisdiction, covering any decision by the Veterans Court on a rule of law "even though the issue underlying the stated position was not 'relied on' by the Veterans Court." Morgan v. Principi, 327 F.3d 1357, 1361, 1363 (Fed. Cir. 2003). The "rule of law" review authority thus extends to both judge-made and statutory law. Wilson v. Principi, 391 F.3d 1203, 1209 (Fed. Cir. 2004). Although §7292(d)(2) continues to foreclose our review of factual determinations or the application of law to the facts of a particular case (except to the extent constitutional issues are

presented), "we do have jurisdiction to determine whether the legal requirement of the statute or regulation has been correctly interpreted in a particular context where the relevant facts are not in dispute, that is, whether there is an error of law." <u>Szemraj v. Principi</u>, 357 F.3d 1370, 1375 (Fed. Cir. 2004).

Even where factual disputes may remain, we have authority to decide whether the Veterans Court applied the correct legal standard. <u>See, e.g.</u>, <u>Alpough v. Nicholson</u>, 490 F.3d 1352, 1358 (Fed. Cir. 2007) (finding jurisdiction to decide whether the Veterans Court correctly interpreted 38 U.S.C. §101(3) and 38 C.F.R. §3.53(b) in rejecting a surviving spouse's claim for benefits); <u>Flores v. Nicholson</u>, 476 F.3d 1379, 1382 (Fed. Cir. 2007) (finding jurisdiction to decide whether the Veterans Court correctly interpreted 38 U.S.C. §103(d)(3) relating to benefits to widows who had remarried).

Mrs. Lamour challenges the standard for marital rights under Philippine law as well as the interpretation of 38 U.S.C. §103(a) and 38 C.F.R. §3.52 in defining "deemed valid" marriages. The interpretation of the "deemed valid" provisions and the determination of foreign law are questions of law. It is within our jurisdiction to decide whether the Veterans Court applied the correct law in assessing her new evidence pursuant to 38 U.S.C. §5108.

*Analysis*

Mrs. Lamour disputes the Board's statement that her marital relationship would not be recognized in the Philippines, stating that her "marital-type relationship," which was ultimately validated by a legal relationship, is deemed valid under Philippine law "for the interest and welfare of the surviving spouse." Reply Br. (Dec. 20, 2007). She contends that her evidence of joint finances and lengthy cohabitation establish a marital relationship

under Philippine law. The Secretary's position, sustained by the Veterans Court, is that Mr. and Mrs. Lamour were validly married only upon their formal marriage ceremony, and that Mrs. Lamour did not prove that common law marriage is recognized under Philippine law.

Foreign law and its interpretation are questions of law, which we review de novo. See Fed. R. Civ. P. 44.1; Guardian Industries Corp. v. United States, 477 F.3d 1368, 1371 (Fed. Cir. 2007). Neither side has cited any authority for its position on common law marriage in the Philippines, and Mrs. Lamour repeats on this appeal that she does not know the Philippine law. We take note of a recent decision of the Veterans Court, citing Philippine legal materials and concluding that common law marriage is not recognized in the Philippines. See Ursulum v. Peake, No. 07-0654, 2008 WL 2883672, at *1 & n.1 (Vet. App. July 21, 2008) (unpublished) (citing Article 34 of the Family Code of the Philippines). Although this case does not provide extensive detail, other decisions of the Veterans Court appear to accept that Philippine law does not recognize marriage without a formal ceremony. E.g., Sandoval v. Brown, 7 Vet. App. 7, 10 (1995). We have been provided with no definitive authority, and do not decide this question, in view particularly of the "deemed valid" marriage provisions of United States law, and their interpretation by the VA general counsel. The relevant statute provides:

> 38 U.S.C. §103(a). Whenever, in the consideration of any claim filed by a person as the widow or widower of a veteran for gratuitous death benefits under laws administered by the Secretary, it is established by evidence satisfactory to the Secretary that such person, without knowledge of any legal impediment, entered into a marriage with such veteran which, but for a legal impediment, would have been valid, and thereafter cohabited with the veteran for one year or more immediately before the veteran's death, or for any period of time if a child was born of the purported marriage or was born to them before such marriage, the purported marriage shall be deemed to be a valid marriage, but only if no claim has been filed by a legal widow or

widower of such veteran who is found to be entitled to such benefits. No duplicate payments shall be made by virtue of this subsection.

The regulation implementing this statute states:

> 38 C.F.R. §3.52. Where an attempted marriage of a claimant to the veteran was invalid by reason of a legal impediment, the marriage will nevertheless be deemed valid if:
> (a) The marriage occurred 1 year or more before the veteran died or existed for any period of time if a child was born of the purported marriage or was born to them before such marriage (see § 3.54(d)), and
> (b) The claimant entered into the marriage without knowledge of the impediment, and
> (c) The claimant cohabited with the veteran continuously from the date of marriage to the date of his or her death as outlined in § 3.53, and
> (d) No claim has been filed by a legal surviving spouse who has been found entitled to gratuitous death benefits other than accrued monthly benefits covering a period prior to the veteran's death.

By regulation, "the claimant's signed statement that he or she had no knowledge of an impediment to the marriage to the veteran will be accepted, in the absence of information to the contrary, as proof of that fact." 38 C.F.R. §3.205(c).

The Department of Veterans Affairs has construed these provisions, ruling that the requirement of a formal marriage ceremony by a jurisdiction that does not recognize common law marriage can constitute a "legal impediment" for the purposes of 38 U.S.C. §103(a). This construction was memorialized in a precedential opinion of the VA general counsel, which recognized the Secretary's "long-standing" broad interpretation of "legal impediment" and which stated as its holding:

> The requirement of a marriage ceremony by a jurisdiction which does not recognize common-law marriage constitutes a "legal impediment" to such a marriage for purposes of [section 103(a) of title 38].

VA Op. Gen. Counsel Prec. 58-91, at 5 (June 17, 1991). The General Counsel Opinion relied on several sources including prior agency administrator decisions, and on a 1961 opinion of the United States Attorney General, which stated:

> Finally, in my opinion, the phrase in the statute "without knowledge of any legal impediment" is not restricted to lack of knowledge of the factual circumstances which caused the impediment to a valid marriage. Lack of knowledge of a law prohibiting particular marriages is apparently within the scope of section 103(a).

42 Op. Att'y Gen. 37, 40 (1961).

A precedential opinion of the VA general counsel is binding on the VA unless superceded by a change in the controlling statute or regulation or a subsequent precedential opinion or judicial decision. See 38 U.S.C. §7104(c); 38 C.F.R. §14.507. The subject opinion has been applied in several rulings of the Veterans Court. In Sandoval, 7 Vet. App. at 10, the court acknowledged the General Counsel Opinion and remanded to the Board because the Board had not provided any basis for its assertion that the claimant knew that common law marriages were prohibited in the Philippines. In Custodia v. Nicholson, No. 04-1652, 2006 WL 3007188, at *3 (Vet. App. Sept. 12, 2006) (unpublished), the Veterans Court stated, "If the appellant intended to enter into a common law marriage with the veteran without knowledge of the fact that Philippine law does not recognize common law marriage, the marriage could be 'deemed valid' for VA purposes." However, the court affirmed the termination of the appellant's benefits because the Board identified prior inconsistent statements from the appellant contradicting her assertion that she did not know that common law marriage was not recognized. Id. at *4. The determination of a claimant's knowledge of a legal impediment is viewed in terms of "what the appellant's state

of mind was at the time that the invalid marriage was contracted." <u>Dedicatoria v. Brown</u>, 8 Vet. App. 441, 444 (1995).

This opinion of the VA general counsel does not appear to have been considered in Mrs. Lamour's case, for neither the Veterans Court nor the Board made any reference to it or to the decisions that have relied on it. Mrs. Lamour's statement that she had no knowledge of the laws governing common law marriage in the Philippines, and her affidavit that she and Mr. Lamour had lived together as husband and wife for five years before their formal ceremony, taken with her new evidence including financial records and the affidavit from her husband before his death, may meet the "deemed valid" marriage criteria as contemplated in the General Counsel Opinion interpreting 38 U.S.C. §103(a). If there was contrary evidence, it was not cited or discussed by the Veterans Court, which appears inconsistent with the presumption afforded by 38 C.F.R. §3.205(c).

We conclude that the Veterans Court erred in its interpretation of the law, for the court did not deem her evidence material to a "deemed valid" marriage, whereas precedent and VA authority state that a jurisdiction's lack of recognition of common law marriage can constitute a "legal impediment" under these provisions. Since the issue of a valid marriage was not considered with application of the "deemed valid" criteria and applicable rulings, and since this aspect was the sole basis of the rejection of her petition to reopen her claim, we vacate the decision of the Veterans Court and remand for reconsideration of Mrs. Lamour's petition.

<u>VACATED AND REMANDED</u>